**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:16-cv-17-FDW**

| | |
|---|---|
| CHUVALO BARRINGER, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FNU STANLEY, et al., ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on a Motion to Quash or, Alternatively, to

Dismiss for Lack of Jurisdiction by Defendant FNU McCoy, (Doc. No. 21), and on a Motion for

Judgment on the Pleadings for Failure to Exhaust Administrative Remedies and For Failure to

State a Claim Upon Which Relief Can Be Granted by Defendants FNU Stanly and FNU Tucker,

(Doc. No. 25).  For the following reasons, the Court will require further briefing from the parties

on the issue of exhaustion of administrative remedies before ruling on either motion.

### I.    BACKGROUND

Pro se Plaintiff Chuvalo Barringer, a North Carolina state court inmate currently

incarcerated at Central Prison in Raleigh, North Carolina, filed this action on January 1, 2016,

pursuant to 42 U.S.C. § 1983.  (Doc. No. 1).  Plaintiff alleges that Defendants violated his right

not to be subjected to cruel and unusual punishment under the Eighth Amendment to the U.S.

Constitution based on an alleged sexual assault while he was incarcerated at Alexander

Correctional Institution on October 22, 2015.  In his Complaint, Plaintiff named as Defendants

"FNU Stanley," "FNU Tucker," "FNU McCoy," all identified as correctional officers at

Alexander at all relevant times.  Plaintiff alleges the following in the Complaint:

> Officer Stanley, Officer Tucker, Office McCoy they let C-11 inmate Ten in my
> cell at 4:30 or 5:00 am.  They let him in my cell [and] watch[ed] him [ejaculate]
> in my mouth and urinated on me.  While I was sleep [sic] on 10-22-15.  They said
> they let inmate Grath in my cell and he was the inmate that gave me AIDS
> because they said they trying to kill me.  By infecting me with the AIDS.  Plus
> poisoning my food.  I can't eat, can't sleep, watch the camera.

(Doc. No. 1 at 3).  As for his requested relief, Plaintiff states, "First, remove from this facility,

$10,000, and to view the camera AIDS test rape kit." (Id. at 4).

On July 14, 2016, this Court performed a frivolity review.  (Doc. No. 9).  The Court took

judicial notice that Plaintiff had another pending § 1983 action in the Eastern District of North

Carolina, in which Plaintiff alleged that a strikingly similar incident had occurred while he was

incarcerated at Maury Correctional Institution.  (Id. at 3).  In the other action, Plaintiff similarly

alleged that, while he was incarcerated at Maury, the correctional officer defendants allowed

inmates to enter his cell and sexually assault him on January 5, 2015, and the officers then told

Plaintiff the other inmate had given him AIDS.[1]  (Id. at 3-4).  See Barringer v. Brown, No. 5:15-

ct-03042-FL, 2016 U.S. Dist. LEXIS 143938 (E.D.N.C. Oct. 18, 2016) (unpublished), Doc. No.

1 at 3.  This Court held on initial review that it was highly unlikely that these extremely similar

incidents occurred at both Maury and Alexander, but the Court nevertheless allowed Plaintiff to

proceed on initial review.  (Doc. No. 9 at 4).

On December 2, 2016, Defendant FNU McCoy filed a motion to quash or, alternatively,

---

[1]  Specifically, Plaintiff alleged, among other things, the following facts in that action: "On 1-5-
15 Officer Byrd and Officer Greene said that they be letting people [other inmates] in my cell
and they be sticking they penis in my mouth and cumming in it, while I am sleep. . . . . [One
officer] said that [an inmate in another cell] has AIDS and now you have it." Id.  In that action,
as relief, Plaintiff sought "$10,000 in damages and to be move[d] from this facility." Id. at 4.
On October 18, 2016, the Eastern District of North Carolina dismissed Plaintiff's action in that
court for failure to exhaust his administrative remedies. Id., Doc. No. 39.

for dismissal based on lack of jurisdiction, based on the contention that the wrong person with the last name McCoy was served with summons. (Doc. No. 21). On the same day, Defendants Stanly and Tucker filed a motion for judgment on the pleadings for failure to exhaust administrative remedies and, alternatively, a motion to dismiss for failure to state a claim upon which relief may be granted. (Doc. No. 25). On December 12, 2016, this Court entered an order notifying Plaintiff of his right to respond to Defendants' motions. (Doc. No. 27). On December 27, 2016, Plaintiff filed a Response, and on January 3, 2017, Defendants filed a Reply. (Doc. Nos. 29, 30).

## II. STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that under the PLRA, exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id.

In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting

3

Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). In Jones v. Bock, 549 U.S. 199

(2007), the Supreme Court stated: "There is no question that exhaustion is mandatory under the

PLRA and that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534

U.S. at 524).

The Fourth Circuit has determined that the PLRA does not require that an inmate allege

or demonstrate that he has exhausted his administrative remedies. Anderson v. XYZ

Correctional Health Servs., 407 F.3d 674 (4th Cir. 2005). Failure to exhaust administrative

remedies is an affirmative defense. "The Court is not precluded, however, from considering at

the outset whether an inmate has exhausted administrative remedies." Green v. Rubenstein, 644

F. Supp. 2d 723, 742 (S.D. W. Va. 2009). The Fourth Circuit stated in Anderson, 407 F.3d at

683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense
> to be pleaded and proven by the defendant. That exhaustion is an affirmative
> defense, however, does not preclude the district court from dismissing a
> complaint where the failure to exhaust is apparent from the face of the complaint,
> nor does it preclude the district court from inquiring on its own motion into
> whether the inmate exhausted all administrative remedies.

## III.    DISCUSSION

Defendants first argue that this action must be dismissed because Plaintiff did not exhaust

his administrative remedies before bringing this action.   That is, Defendants contend that

Plaintiff did not exhaust his administrative grievance through Step Three of North Carolina's

Administrative Remedies Procedure ("ARP"). See (Doc. No. 24-2). Defendants contend that,

instead, Plaintiff initiated a complaint under the Prison Rape Elimination Act ("PREA"), 42

U.S.C. § 15601 et seq., and the investigation was pending when Plaintiff filed this action.

Defendants contend that Plaintiff's initiation of an action under the PREA simply does not

4

satisfy the requirements for exhaustion of administrative remedies under the PLRA.

Defendants note that, in the similar action filed by Plaintiff in the Eastern District of North Carolina, Plaintiff also relied on a PREA complaint to satisfy § 1997e(a)'s exhaustion requirement. See Barringer, File No. 5:15-ct-03042-FL, 2016 U.S. Dist. LEXIS 143938 (E.D.N.C. Oct. 18, 2016) (unpublished). As in this case, Plaintiff there argued that he had exhausted his administrative remedies by initiating a PREA investigation. In the other action, the Eastern District of North Carolina held that "[t]he exhaustion requirements of a PREA investigation and DPS's administrative remedy process are different, and exhaustion for the purposes of PREA does not comport with § 1997e(a)." Thus, the court held that Plaintiff's PREA complaint did not satisfy § 1997e(a), and his case was dismissed without prejudice to refile after he properly exhausted his administrative remedies. Id.

In their motion to dismiss, Defendants contend that the same conclusion is compelled here. The Court agrees with Defendants that a PREA complaint does not satisfy Plaintiff's requirement to complete all three steps of the three-step grievance process under North Carolina's ARP. Furthermore, a prisoner's lack of "full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies." Graham v. County of Gloucester, Va., 668 F. Supp. 2d 734, 741 (E.D. Va. 2009); see also Ross v. Blake, 136 S. Ct. 1850 (2016) (refusing to recognize a "special circumstances" exception to the exhaustion requirement where the prisoner reasonably, but mistakenly, believed that he had sufficiently exhausted his administrative remedies). Courts have, however, recognized an exception for a plaintiff's failure to exhaust his administrative remedies when a prisoner, "through no fault of his own, was prevented from availing himself of [administrative remedies]," Moore, 517 F.3d at 725. In 2016, the Supreme Court held in Ross v. Blake that, in certain,

5

limited circumstances, a plaintiff could show that administrative remedies were not available to him. That is, the Supreme Court noted various circumstances in which exhaustion is not required:

> First, as Booth [v. Churner, 532 U.S. 731 (2001)] made clear, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In Booth's words: "[S]ome redress for a wrong is presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." So too if administrative officials have apparent authority, but decline ever to exercise it. . . . When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.
>     . . . .
>     And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. In Woodford, we recognized that officials might devise procedural systems (including the blind alleys and quagmires just discussed) in order to "trip[] up all but the most skillful prisoners." And appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

Ross v. Blake, 136 S. Ct. 1859-1861 (2016) (some citations omitted).

The facts of this case may fall under one of the categories of cases discussed by the Supreme Court in Ross v. Blake, in which exhaustion is excused because the administrative remedies process was effectively made unavailable to the prisoner. That is, here, in the section of the Complaint regarding exhaustion of administrative remedies, Plaintiff states that he filed a grievance on October 22, 2015, and then "[prison officials] forward[ed] it to the head of Prison Rape Elimination Act of 2003." (Doc. No. 1 at 2). In response to a question on his Complaint as

to whether he appealed the adverse decision, he states "the decision was to forward it to PREA, and they [are] still investigating." (Id.). The Court notes that Plaintiff attached to his Complaint a grievance dated October 22, 2015, based on the incident allegedly occurring on that same day. That grievance (designated on the form as No. 48705-15-394) was noted as received by the prison on October 29, 2015, and a prison official signed the grievance.[2] (Doc. No. 1-1 at 1). Plaintiff has also attached what appears to be a form requesting support services under the PREA.[3] (Id. at 2).

In his response to Defendants' motion to dismiss, he states that "I did my administrative remedy procedure. And PREA, I send all that in when I file the lawsuit." (Doc. No. 19 at 1). Plaintiff's statement in his Complaint and response to the motion to dismiss, and the fact that only one grievance was filed at step one, but with no appeals to steps two or three, suggest the possibility that prison officials prevented Plaintiff from proceeding to step two and, instead, informed him that the proper action was for him to proceed under the PREA.[4] As noted, Plaintiff alleged in the Complaint that, in response to his grievance, "the decision was to forward it to PREA, and they [are] still investigating." Certainly, if the facts in this case show that, if after Plaintiff filed his first grievance, prison officials at Alexander told him they were converting his grievance into a PREA action, this would absolve Plaintiff of having to exhaust his administrative remedies through the ARP. Before proceeding further on the issue of exhaustion,

---

[2] Thus, in contrast to Plaintiff's action in the Eastern District of North Carolina, where he appears to have proceeded solely under the PREA, here he did at least file one grievance.
[3] That form, however, notes an incident date of November 13, 2015, which was about three weeks after the date of the alleged incident giving rise to Plaintiff's claim in this action. Furthermore, that form is not signed by any prison official notifying it as being received.
[4] The Court makes no findings as to what happened, as there is simply not enough information before the Court at this point in the proceedings. The current record before this Court simply does not explain to the Court why his grievance did not proceed past Step One.

the Court will therefore require additional briefing on the parties with regard to the issue. That is, the parties shall present evidence, through prison official affidavits, if possible, as to what happened procedurally once Plaintiff filed his first grievance.[5] If officials determined that Plaintiff was required to proceed under the PREA and communicated this to him, then Plaintiff will be excused from exhausting his administrative remedies before filing this action.[6]

**IT IS THEREFORE ORDERED** that:

(1) Defendants shall have 20 days in which to file a memorandum addressing the issues raised here regarding exhaustion of administrative remedies. Plaintiff shall then have 20 days to file a response to Defendants' memorandum.

Signed: February 15, 2017

Frank D. Whitney
Chief United States District Judge

---

[5] For instance, was the grievance processed and denied? What happened after that? Was Plaintiff instructed that he could proceed to Step Two in official correspondence?

[6] Defendants also move to dismiss for failure to state a claim and on other grounds. Because exhaustion is mandatory, it is appropriate for the Court to resolve this issue before addressing the merits of Plaintiff's claims.