# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:16-cv-17-FDW

| | |
|---|---|
| CHUVALO BARRINGER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FNU STANLEY, et al., )<br>)<br>Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on a Motion to Quash or, Alternatively, a Motion to Dismiss for Lack of Jurisdiction by Defendant FNU McCoy, (Doc. No. 21), and on a Motion for Judgment on the Pleadings for Failure to Exhaust Administrative Remedies and For Failure to State a Claim Upon Which Relief Can Be Granted by Defendants FNU Stanley and FNU Tucker, (Doc. No. 25).

## I.   BACKGROUND

Pro se Plaintiff Chuvalo Barringer, a North Carolina state court inmate currently incarcerated at Central Prison in Raleigh, North Carolina, filed this action on January 1, 2016, pursuant to 42 U.S.C. § 1983. (Doc. No. 1). Plaintiff alleges that Defendants violated his right not to be subjected to cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution based on an alleged sexual assault while he was incarcerated at Alexander Correctional Institution on October 22, 2015. In his Complaint, Plaintiff named as Defendants "FNU Stanley," "FNU Tucker," and "FNU McCoy," all identified as correctional officers at Alexander at all relevant times. Plaintiff alleges the following in the Complaint:

1

> Officer Stanley, Officer Tucker, Office McCoy they let C-11 inmate Ten in my cell at 4:30 or 5:00 am. They let him in my cell [and] watch[ed] him [ejaculate] in my mouth and urinated on me. While I was sleep [sic] on 10-22-15. They said they let inmate Grath in my cell and he was the inmate that gave me AIDS because they said they trying to kill me. By infecting me with the AIDS. Plus poisoning my food. I can't eat, can't sleep, watch the camera.

(Doc. No. 1 at 3). As for his requested relief, Plaintiff states, "First, remove from this facility, $10,000, and to view the camera AIDS test rape kit." (Id. at 4).

On July 14, 2016, the Court performed a frivolity review. (Doc. No. 9). The Court took judicial notice that Plaintiff had another pending § 1983 claim in the Eastern District of North Carolina, in which Plaintiff alleged that a strikingly similar incident occurred while he was incarcerated at Maury Correctional Institution. See Barringer v. Brown, No. 5:15-ct-03042-FL, 2016 U.S. Dist. LEXIS 143938 (E.D.N.C. Oct. 18, 2016) (unpublished), Doc. No. 1 at 3. In the other action, Plaintiff similarly alleged that, while he was incarcerated at Maury, the correctional officer defendants allowed inmates to enter his cell and sexually assault him on January 5, 2015, and the officers then told Plaintiff the other inmate had given him AIDS.[1] This Court held on initial review that it was highly unlikely that these extremely similar incidents occurred at both Maury and Alexander, but the Court nevertheless allowed Plaintiff to proceed on initial review. (Doc. No. 9 at 4).

On August 30, 2016, the U.S. Marshal issued summonses to "FNU Stanley," "FNU Tucker," and "FNU McCoy." (Doc. Nos. 11, 12, 13). Defendants Stanley and Tucker were

---

[1] Specifically, Plaintiff alleged, among other things, the following facts in that action: "On 1-5-15 Officer Byrd and Officer Greene said that they be letting people [other inmates] in my cell and they be sticking they penis in my mouth and cumming in it, while I am sleep. . . . . [One officer] said that [an inmate in another cell] has AIDS and now you have it." Id. In that action, as relief, Plaintiff sought "$10,000 in damages and to be move[d] from this facility." Id. at 4. On October 18, 2016, the Eastern District of North Carolina dismissed Plaintiff's action in that court for failure to exhaust his administrative remedies. Id., Doc. No. 39.

2

served on September 19, 2016. (Doc. Nos. 14, 15). The U.S. Marshal apparently served the wrong FNU McCoy on September 15, 2016. (Doc. No. 16). That is, the U.S. Marshal served a person named Sandy McCoy, rather than the person whom Plaintiff intended to be served, a person named Joshua McCoy, who was employed as a correctional officer in the unit where Plaintiff was allegedly sexually asaulted. See (Doc. No. 22 at 2).

On December 2, 2016, Sandy McCoy filed a motion to quash or, alternatively, for dismissal based on lack of jurisdiction, based on the contention that the wrong person with the last name McCoy was served with summons. (Doc. No. 21). On the same day, Defendants Stanley and Tucker filed the pending motion for judgment on the pleadings for failure to exhaust administrative remedies and, alternatively, a motion to dismiss for failure to state a claim upon which relief may be granted. (Doc. No. 25). On December 12, 2016, this Court entered an order notifying Plaintiff of his right to respond to Defendants' motions. (Doc. No. 27).

On December 27, 2016, Plaintiff filed a Response, and on January 3, 2017, Defendants filed a Reply. (Doc. Nos. 29, 30). On February 15, 2017, the Court entered an order requiring further briefing from the parties on the issue of exhaustion of administrative remedies. (Doc. No. 31). Specifically, the Court ordered the parties to address whether Defendants made the administrative remedies process unavailable to Plaintiff such that failure to exhaust may be excused. The parties have submitted their materials on the issue of exhaustion. (Doc. Nos. 32, 34). This matter is therefore ripe for disposition.

**II.     STANDARD OF REVIEW**

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under

section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that under the PLRA, exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id.

In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534 U.S. at 524).

**III.    DISCUSSION**

Defendants first contend that this action must be dismissed because Plaintiff did not exhaust his administrative remedies before bringing this lawsuit. Defendants contend that, instead, Plaintiff initiated a complaint under the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15601 et seq., and the investigation was pending when Plaintiff filed this action. Defendants contend that Plaintiff's initiation of an action under the PREA simply does not satisfy the requirements for exhaustion of administrative remedies under the PLRA. For the following reasons, the Court agrees that Plaintiff's action must be dismissed for failure to

4

exhaust administrative remedies.

The North Carolina Department of Public Safety ("NCDPS") has established, in its Administrative Remedies Procedures ("ARP"), a three-step procedure governing submission and review of inmate grievances. Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). The ARP first encourages inmates to attempt informal communication with responsible authorities at the facility in which the problem arose. (Doc. No. 24-2 at § .0301(a)). If informal resolution is unsuccessful, the NCDPS ARP provides that any inmate in NCDPS custody may submit a written grievance on Form DC-410. (Id. at § .0310(a)). If the inmate is not satisfied with the decision reached at the step one level of the grievance process, he may request relief from the Facility Head during step two. (Id. at § .0310(b)(1)). If the inmate is not satisfied with the decision reached by the Facility Head, he may appeal his grievance to the Secretary of NCDPS through the inmate grievance examiner at step three. (Id. at § .0310(c)(1)). A decision by the Inmate Grievance Examiner or a modification by the Secretary of NCDPS shall constitute the final step of the ARP. (Id. § .0310(c)(6)).

In his Complaint, Plaintiff does not contend that he completed the internal ARP process before filing his Complaint. Rather, he alleges that he filed a grievance based on the incident on October 22, 2015, which prison officials then forwarded "to the head of the Prison Rape Elimination Act of 2003," and "they still investigating." (Doc. No. 1 at 2). Plaintiff's initiation of an action under the PREA simply does not satisfy the requirements for exhaustion of administrative remedies under North Carolina's ARP.[2] In other words, PREA complaints are not

---

[2] The purpose of the PREA is "to provide guidelines for the prevention, detection, response, investigation, prosecution and tracking of inmate on inmate and staff on inmate sexual abuse and sexual harassment." (Doc. No. 24-1 at 1). PREA complaints are governed by NCDPS's Inmate Sexual Abuse and Sexual Harassment Policy.

prison grievances for purposes of satisfying the administrative remedies requirement under the PLRA.[3]  Accord Porter v. Howard, 531 Fed. Appx. 792, 793 (9th Cir. 2013) ("[Plaintiff] provides no support for his contention that he was excused from the requirement that he file an administrative grievance by operation of the Prison Rape Elimination Act of 2003 . . . ."); Omaro v. Annucci, 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("Nothing in the text or legislative history of the PREA suggests that it was intended to abrogate the PLRA's exhaustion requirement."); Lamb v. Franke, No. 2:12-cv-367-MO, 2013 WL 638836, at *2 (D. Or. Feb. 14, 2013) (unpublished) ("The PREA does not impose an alternative remedial scheme, nor does it supersede PLRA's exhaustion requirement."); Myers v. Grubb, No. CV 12-29-H-DLC, 2013 WL 352194, at *1 (D. Mont. Jan. 29, 2013) ("The Prison Rape Elimination Act ('PREA') does not impose a different administrative remedy scheme or supersede PLRA's requirement that a prisoner exhaust all available administrative remedies before filing suit.").

This Court notes that, in the similar action filed by Plaintiff in the Eastern District of North Carolina, Plaintiff also relied on a PREA complaint to satisfy § 1997e(a)'s exhaustion requirement.  See Barringer v. Brown, No. 5:15-ct-03042-FL, 2016 U.S. Dist. LEXIS 143938 (E.D.N.C. Oct. 18, 2016) (unpublished).  As in this case, Plaintiff argued in that action that he had exhausted his administrative remedies by initiating a PREA investigation.  In the other action, the Eastern District of North Carolina held that "[t]he exhaustion requirements of a PREA

---

[3]  Indeed, the North Carolina ARP anticipates that an investigation under the PREA is be conducted concurrently with the three-step grievance process.  See Doc. No. 24-1 at §§ .0306(a), .0310(a) (stating that no grievance alleging sexual abuse or harassment shall be rejected at Step One, and that such grievance will proceed forward to Step Two review); Doc. No. 24-1 at § .0310(b) (stating that, during Step Two of the grievance process, "[a]ll sexual abuse or harassment related grievances must be investigated by a specially trained PREA investigator. Investigation must be completed within thirty (30) days.").

investigation and DPS's administrative remedy process are different, and exhaustion for the purposes of PREA does not comport with § 1997e(a)." Id., Doc. No. 39 at 6. Thus, the court held that Plaintiff's PREA complaint did not satisfy § 1997e(a), and his case was dismissed without prejudice to refile after he properly exhausted his administrative remedies. Id.

The same results are required in this case. As noted, a PREA complaint does not satisfy Plaintiff's requirement to complete all three steps of the ADR three-step grievance process in North Carolina. Furthermore, a prisoner's lack of "full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies." Graham v. County of Gloucester, Va., 668 F. Supp. 2d 734, 741 (E.D. Va. 2009); see also Ross v. Blake, 136 S. Ct. 1850 (2016) (refusing to recognize a "special circumstances" exception to the exhaustion requirement where the prisoner reasonably, but mistakenly, believed that he had sufficiently exhausted his administrative remedies). Finally, although courts recognize an exception for a plaintiff's failure to exhaust his administrative remedies when a prisoner, "through no fault of his own, was prevented from availing himself of [administrative remedies]," Moore, 517 F.3d at 725, Plaintiff here has not shown that he was prevented from availing himself of the administrative remedies process. In his response, he states that "I did my administrative remedy procedure. And PREA, I send all that in when I file the lawsuit." (Doc. No. 19 at 1). In their response to the Court's order from the parties for further briefing on the exhaustion issue, however, Defendants have submitted the affidavit of Eric Dye, Assistant Superintendent IV at Alexander Correctional Institution, showing that Plaintiff did not process his grievances through all steps of the grievance process. See (Doc. No. 32-1: Dye Aff.). Defendants state the following in their response:

Here, there is no evidence that Plaintiff was prevented from filing a grievance or

7

> completing the ARP process. All grievances are processed according to the ARP
> upon receipt. In response to the Order (D.E. 31) filed February 15, 2017, NCDPS
> has reviewed Plaintiff's inmate file. The record shows that Plaintiff submitted
> Grievance Number 4870-S-15-394, and it was accepted at Step 1 for the ARP
> process. During Step 1, Plaintiff was notified that his grievance was identified as
> an allegation of inmate sexual abuse or harassment. Plaintiff was further notified
> that his grievance was forwarded to the Facility Head for appropriate action
> according to the Prison Rape Elimination Act of 2003 and the Division for Adult
> Correction, Prisons, Inmate Sexual Abuse and Sexual Harassment Policy, Chapter
> F, Section .3400. Plaintiff had the ability to accept or reject the Step 1 response.
> Plaintiff acknowledged in writing that he accepted the Step 1 response. Plaintiff
> decided not to pursue his grievance to Step 2 of the ARP. Id. Therefore, Plaintiff
> did not complete all three steps of the ARP process for Grievance Number 4870-
> S-15-394. Id.
>   The record further shows that the October 22, 2015 incident was
> investigated through PREA, and the sexual allegations were determined to be
> unfounded. Plaintiff was charged with an A18 disciplinary infraction for making
> false allegations related to the October 22, 2015 incident. Plaintiff pled guilty to
> the charges, and he was found guilty by the Disciplinary Hearing Officer.
>   No other grievances were filed related to the October 22, 2015 incident.
> Thus, Plaintiff failed to exhaust his administrative remedies prior to filing his
> Complaint (D.E. 1) on January 21, 2016.

(Doc. No. 32 at 3-4) (citations omitted).

In response to Defendants' evidence regarding exhaustion, Plaintiff has submitted a letter to the Court, stating, "I don't know what happen to the administrative remedies," but he maintains that he did exhaust his administrative remedies. (Doc. No. 34 at 1). Plaintiff has not shown, however, that he exhausted the three-step administrative remedies process before filing this action, nor has he presented any evidence showing that the administrative remedies process was unavailable to him.[4] In sum, the Court finds that the Complaint must be dismissed for

---

[4] Plaintiff attached to his Complaint a grievance dated October 22, 2015, based on the incident allegedly occurring on that same day. That grievance was noted as received by the prison on October 29, 2015. (Doc. No. 1-1 at 1). However, he has not attached any additional documents showing that he exhausted this grievance through Step Three of the grievance process. Plaintiff has also attached what appears to be a form requesting support services under the PREA. (Id. at 2). That form, however, notes an incident date of November 13, 2015, which was about three weeks after the date of the alleged incident giving rise to Plaintiff's claim in this action.

failure to exhaust administrative remedies.

## IV. CONCLUSION

Plaintiff's Complaint will be dismissed without prejudice for failure to exhaust administrative remedies.

**IT IS THEREFORE ORDERED** that:

(1) Plaintiff's action is **DISMISSED** without prejudice for failure to exhaust administrative remedies. To this extent, the Motion for Judgment on the Pleadings for Failure to Exhaust Administrative Remedies and For Failure to State a Claim Upon Which Relief Can Be Granted filed by Defendants FNU Stanley and FNU Tucker, (Doc. No. 25), is **GRANTED**.

(2) Defendant FNU McCoy's Motion to Quash or, Alternatively, a Motion to Dismiss or Lack of Jurisdiction, (Doc. No. 21), is **DENIED** as moot.

(3) The Clerk of Court is directed to close this case.

Signed: March 16, 2017

Frank D. Whitney
Chief United States District Judge

---

Furthermore, that form is not signed by any prison official.